UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICK BURZYNSKI,

               Plaintiff,                            Case No. 1:21-cv-12650

v.                                            Honorable Thomas L. Ludington
                                                United States District Judge
UAW LOCAL 699, TOM HURST,
RHONDA FRITZ, and JOSHUA BAUER,

               Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND
REMANDING CASE**

This Order addresses the question of whether a union official can create federal jurisdiction by raising the affirmative defense of qualified privilege to a fellow union member's claim under Michigan law that the official defamed him on the Internet, Facebook, and news broadcasts. The answer, respectfully, is "No."

Notably, in reviewing a motion to remand, this Court must assume all the facts set forth by Plaintiff to be true and resolve all uncertainties as to state substantive law in favor of Plaintiff. *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 & n.7 (6th Cir. 2011) (unpublished) (collecting cases); *accord Colon v. Ashby*, 314 F. Supp. 3d 116, 120 (D.D.C. 2018).

**I.**

**A.**

From 2015 to 2018, Plaintiff Rick Burzynski was the president of United Auto Workers Local 699. ECF No. 1-1 at PageID.10. Craig Everett served as financial secretary during Plaintiff's administration. *Id.* In 2017, Plaintiff hired Chulindra Cooks, "an African American female and the first Black secretary to be hired at Local 699." *Id.*

In 2018, Defendant Tom Hurst became the president of Local 699 and Defendant Rhonda Fritz became the financial secretary, replacing Plaintiff and Craig Everett. *See id.* at PageID.11. Immediately upon assuming their new roles, according to Plaintiff, Defendants Hurst and Fritz began subjecting Chulindra Cooks to egregious racial discrimination, repeatedly using "the 'N' word" and calling her a "f**king N***ger" on the phone, eventually compelling her to address "racial discrimination, harassment, and retaliation." *See id.* Ultimately, Plaintiff alleges, Defendants Hurst and Fritz terminated Chulindra Cook's employment. *Id.*

On October 18, 2020, Craig Everett and Plaintiff raised "a membership motion to return Chulindra Cooks to her secretarial positions with back pay." *Id.* The members of UAW Local 699 voted in favor, and the motion passed. *Id.* at PageID.12. But Defendants Hurst and Fritz "refused to implement the approved motions to return Ms. Cooks to her secretarial position." *Id.*

In early May 2021, in retaliation for Craig Everett and Plaintiff's effort to get Chulindra Cooks rehired, Plaintiff alleges that Defendants Hurst and Fritz launched a "hit job" to "discredit, silence, embarrass, and/or harm" all who opposed their racially motivated termination of Chulindra Cooks. *Id.* at PageID.12, 14, 23. Defendants Hurst and Fritz began spreading lies that Chulindra Cooks, Plaintiff, and their allies committed criminal conduct. Defendants escalated their false accusations from text messages, to Local 699's official newsletter, *Firepower*, to the Internet, to local news broadcasts in at least three cities, not to mention that Defendants and their agents printed the lies on flyers they handed to Plaintiff's coworkers during work hours. *See id.* at PageID.11–15. Defendants were purportedly worried that Plaintiff and Craig Everett might run in a special election to regain their positions as president and financial secretary so they could rehire Local 699's first Black secretary. *Id.* at PageID.15, 16 & n.2. Defendants Hurst and Fritz cancelled the election. *Id.*

Steve Dawes, the regional director of UAW Region 1D, which governs UAW Local 699, learned of Defendants' public accusations of embezzlement of union funds. On May 21, 2021, "very disturbed" that Defendants publicly distributed the "allegations with no proof, no substance," Regional Director Dawes issued a statement to Local 699. *Id.* at PageID.15, 17, 59–60. His statements revealed that the UAW ran three audits during Plaintiff's administration and one audit after Defendants' public accusations, all which "show **NO** misappropriation or missing funds." *Id.* at PageID.57. He elaborated that "there are no facts to support [Defendants'] claims." *Id.*

## B.

On September 15, 2021, Plaintiff filed a complaint in the Tenth Circuit Court of Saginaw County. According to Plaintiff, Defendants defamed him, Craig Everett, and Chulindra Cooks for defending "the first Black secretary to be hired at Local 699" from Defendants' racial discrimination and termination. *See generally Burzynski v. Bauer*, No. 21-045405-CZ (Mich. Cir. Ct. 10th Saginaw Cnty. Sept. 15, 2021); ECF No. 1-1. He seeks $25,000 in damages for "defamation *per se*, defamation by implication, conspiracy to defame, false light invasion of privacy, and intentional infliction of emotional distress"—all under Michigan laws. *See* ECF No. 1-1 at PageID.9.

On November 11, 2021, Defendants removed the case under 28 U.S.C. § 1331 and 1441, contending that Plaintiff's Michigan defamation claim is completely preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). ECF No. 1. Specifically,

Defendants assert that resolving Plaintiff's defamation claim would require interpretation of the constitution of the United Auto Workers (the "UAW Constitution").[1]

An initial review of the pleadings reflected concerns about federal subject-matter jurisdiction. Specifically, removal appeared improper because (1) the Complaint did not contest whether Defendants' communications were entitled to qualified privilege, as Defendants alleged; (2) the Complaint did not identify the union constitution, as Defendants alleged; (3) the Complaint did not raise a federal question; (4) the Complaint did not establish jurisdiction based on diversity of citizenship; and (5) all Defendants in the Complaint did not consent to removal. Due to those deficiencies, Defendants were directed to show cause why this case should not be remanded. ECF No. 2. As directed, Defendants filed supplemental briefing. ECF No. 4. To avoid waiving the right to seek remand, Plaintiff filed a motion to remand, ECF No. 7, which has been fully briefed, ECF Nos. 9; 10.

Having reviewed the parties' papers, a hearing is not required, and this case will be remanded back to the Saginaw County Circuit Court as explained hereafter.

**II.**

Plaintiff's Complaint only pleads claims under Michigan law. Defendants' Notice of Removal is exclusively grounded on Plaintiff's defamation claim.

**A.**

A prima facie case of defamation in Michigan has four elements:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

---

[1] The United Auto Workers (UAW) is the American labor union in which the parties are current or former members.

*Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 540 (Mich. 2010) (citing *Mitan v. Campbell*, 706 N.W.2d 420, 421–22 (Mich. 2005) (per curiam)).

Under element two, union officials might be entitled to a "qualified privilege" as "limited public figures" in very narrow circumstances. *Lins v. Evening News Ass'n*, 342 N.W.2d 573, 580 (Mich. Ct. App. 1983).

To establish federal subject-matter jurisdiction over Plaintiff's Michigan defamation claim, Defendants state that Plaintiff alleged that Defendants are entitled to a qualified privilege under the UAW constitution. *See* ECF No. 1 at PageID.2. But Plaintiff's Complaint makes no reference to privilege. *See generally* ECF No. 1-1 at PageID.7–32.

Defendants also contend that plaintiffs who allege defamation must prove the defendant's qualified privilege. *See* ECF No. 1 at PageID.3. Yet it is well settled that qualified privilege is an affirmative defense that a defendant must raise in its answer. *Bufalino v. Maxon Bros.*, 117 N.W.2d 150, 154 (Mich. 1962) ("The qualified privilege is an affirmative defense."); *Peisner v. Detroit Free Press, Inc.*, 266 N.W.2d 693, 695 (Mich. Ct. App. 1978); *accord Joba Constr. Co. v. Burns & Roe Inc.*, 329 N.W.2d 760, 772 (Mich. Ct. App. 1982) ("[D]efendant had the burden of raising qualified privilege as an affirmative defense" (citing RESTATEMENT (SECOND) OF TORTS § 604 cmt. d (AM. L. INST. 1977) ("Once the communication is made, the defendant has the burden of showing that it is privileged . . . ."))); *see also Square Lake Hills Ass'n v. Garland*, No. 350403, 2020 WL 6684466, at *5 (Mich. Ct. App. Nov. 12, 2020) (stating that qualified privilege is an affirmative defense); *Bedford v. Witte*, 896 N.W.2d 69, 72 (Mich. Ct. App. 2016) ("Privilege can be used as a defense in a defamation action." (citing *Postill v. Booth Newspapers, Inc.*, 325 N.W.2d 511 (Mich. Ct. App. 1982)); *Hayes v. Booth Newspapers, Inc.*, 295 N.W.2d 858, 860 (Mich. Ct.

App. 1980) ("Defendants answered plaintiff's complaint and raised the affirmative defenses of . . . lack of actual malice.").

## B.

Under the well-pleaded complaint rule, for a state-law claim to establish subject-matter jurisdiction under 28 U.S.C. § 1331, a federal question must appear on the face of the plaintiff's well-pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In this way, a complaint that relies on only state-law claims lacks subject-matter jurisdiction and should therefore be remanded to the state court. *Crawford v. TRW, Inc.*, 815 F. Supp. 1028, 1032 (E.D. Mich. 1993).

Defendants can avoid the well-pleaded complaint rule in two limited circumstances. *Roddy v. Grand Trunk W. R.R.*, 395 F.3d 318, 322 (6th Cir. 2005). The first is when Congress expressly permits removal. *Id.*; *see, e.g.*, 15 U.S.C. § 77p(c) (allowing certain securities class actions to be removed to federal court). That exception does not apply here.

The second circumstance is when the "pre-emptive force of a statute is so 'extraordinary,' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)).

The Supreme Court has recognized complete preemption in only three statutory settings: Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185; the Employee Retirement Income Security Act of 1975 ("ERISA"), 29 U.S.C. §§ 1001–1461; and § 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85, 86. *See Beneficial Nat'l*, 539 U.S. at 7–9; *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 563 (6th Cir. 2007).

Defendants' Notice of Removal relies on § 301 of the LMRA, 29 U.S.C. § 185. *See* ECF No. 1 at PageID.3. Section 301 of the LMRA provides that:

> Suits for *violation of contracts between an employer and a labor organization* representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (emphasis added). According to Defendants, determining whether their allegedly defamatory communications were privileged would require this Court to interpret the UAW constitution. *See* ECF No. 4 at PageID.553–54. Thus, this case must be remanded only if the "unprivileged communication" element of Plaintiff's Michigan defamation claim requires this Court to interpret the UAW constitution.

### III.

Neither exception to the well-pleaded complaint rule applies here.

Defendants allege that this Court has subject-matter jurisdiction over Plaintiff's state-law defamation claim because it is "inextricably intertwined with interpretation of the UAW [c]onstitution." ECF No. 4 at PageID.553; *see also* ECF No. 1 at PageID.3.

As a threshold matter, several courts have questioned whether a union constitution is a "collective bargaining agreement" that triggers § 301 preemption. *See, e.g.*, *Sowell v. Int'l Bhd. of Teamsters*, No. CIV.A. H-09-1739, 2009 WL 4255556, at *3 n.13 (S.D. Tex. Nov. 24, 2009); *Loc. Unions 20 v. United Bhd. of Carpenters & Joiners of Am.*, 223 F. Supp. 2d 491, 500 (S.D.N.Y. 2002).

But the Sixth Circuit has found that interpretation of a union constitution falls within the ambit of § 301 preemption. *Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Can., Loc. 704*, 25 F.3d 1308, 1310 (6th Cir. 1994). Indeed, the purpose of § 301 preemption is to confer the federal courts with jurisdiction over labor disputes that surround the terms of a union agreement, as Congress intended the Taft-Hartley Act to cover such

- 7 -

disputes. *Id.* ("[T]he maintenance of relative peace between labor and management nationwide requires uniform interpretation of collective bargaining agreements.").

Yet Plaintiff's claims do not require interpretation of the UAW constitution.

## A.

Because qualified privilege is an affirmative defense in Michigan, the privilege element of a Michigan defamation claim cannot create § 301 preemption as a matter of law. *Id.* ("[T]he fact that the *defendant* raises a federal preemption defense does not mean that this cause of action arises under federal law; nor does the fact that analysis of the union's preemption *defense* may require a court to interpret the union constitution.").

Indeed, it is a maxim of federal civil procedure that an affirmative defense raised by a defendant may not establish federal jurisdiction under 28 U.S.C. § 1331. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").

The Complaint does not even whisper of the UAW constitution, a collective bargaining agreement, or any other type of union contract. In their attempts to argue otherwise, Defendants overstate factual inferences based on Plaintiff's articulation of Defendants' allegedly defamatory statements. *Compare* ECF No. 9 at PageID.680 ("Plaintiff has also alleged that Defendants failed to follow the Constitution before publishing allegedly defamatory statements and his claims are similarly preempted by § 301."), *with* ECF No. 1-1 at PageID.16 ("That the news article in which Dawes'[s] statements appeared included a copy of the defamatory May 4 *FIREPOWER* article, thus spreading Defendants' malicious, fabricated lies to an even wider audience."). Moreover,

Plaintiff has repeatedly emphasized that his claims neither rest on nor require interpretation of the UAW constitution. *See, e.g.*, ECF No. 7 at PageID.608. Indeed, to the extent such documents are mentioned in the Complaint, they are not relied on to establish Plaintiff's claims; he only refers to them as indirect objects of and not essential to his claims. Therefore, this case will be remanded.

**B.**

The case will also be remanded because Plaintiff's defamation claim does not require interpretation of the UAW constitution.

A minority of courts have found that a defamation claim requires interpretation of a collective bargaining agreement. *See, e.g.*, *Panczykowski v. Laborers' Int'l Union of N. Am.*, 2 F. App'x 157, 160 (2d Cir. 2001); *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1063 (9th Cir. 1989). But in those cases, the collective bargaining agreement in question empowered or required the speaker to make the communication at issue. In another minority set of cases, courts find that the veracity of the allegedly defamatory statements depends on the interpretation of the collective bargaining agreement. *See, e.g.*, *Fasciana v. Coia*, No. 97-CV-0833A, 2000 WL 424200, at *2 (W.D.N.Y. Mar. 31, 2000).

By contrast, most courts have found that a defamation claim does not warrant federal preemption. *See, e.g.*, *Casselli v. City of Philadelphia*, 54 F. Supp. 3d 368, 375–76 (E.D. Pa. 2014) ("[A] defamation claim arising from statements made outside [union] proceedings is not preempted because no examination of the scope of the conditional privilege is required."); *Anzevino v. DePasquale*, No. 4:08 CV 2492, 2009 WL 1662498, at *3, 9–10 (N.D. Ohio June 15, 2009); *Lawton v. United Parcel Serv., Inc.*, 338 F. Supp. 2d 347, 348–49 (D. Conn. 2004); *Naitram v. Loc. 2222 of Int'l Bhd. of Elec. Workers*, 982 F. Supp. 83, 86 (D. Mass. 1997) ("[A]n alleged pattern of false and malicious statements made by . . . union members . . . . differentiate plaintiff's

state law claim from other preemption cases where the central focus is on the terms of the collective bargaining agreement under which the plaintiff was covered."); *Smith v. Bates*, 787 F. Supp. 176, 178–79 (N.D. Cal. 1992); *see also* Katherine Van Wezel Stone, *Mandatory Arbitration of Individual Employment Rights: The Yellow Dog Contract of the 1990s*, 73 DENV. U. L. REV. 1017, 1028 (1996) (noting that after 1994, "claims of defamation, intentional infliction of emotional distress, fraud, and battery are no longer routinely preempted" (first citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994); and then citing *Livadas v. Bradshaw*, 512 U.S. 107 (1994))).

This case is more akin to the latter set of cases. Granted, the communications in question were posted in an intraunion publication, as in the cases above, which might lend to some interpretation of the UAW constitution. But here, Defendants also disseminated the communications on Facebook, multiple Internet websites, and several other public forums not intended exclusively for UAW members, including the public broadcasts of numerous news stations in multiple cities—albeit under the guise of an "official duty." ECF No. 1-1 at PageID.12–13. Accordingly, the state court could resolve the merits of Plaintiff's defamation claim without considering the *Firepower* article and, therefore, is not required to interpret the UAW constitution to determine whether the communications are within the scope of the union officials' duties.

And Plaintiff does not deny that embezzling union funds is misconduct. Rather, he denies committing the act itself. *Id.* at PageID.14. The state court can determine this issue of fact—whether Plaintiff embezzled union funds—without referring to the UAW constitution. *Lawton*, 338 F. Supp. 2d at 349 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)).

No federal court has found that it was required to interpret a union constitution in order to determine whether communications that a union official made to the general public are privileged. Such communications would likely not fall within the ambit of privilege for purposes of a

defamation claim. *See Timmis v. Bennett*, 89 N.W.2d 748, 755 (Mich. 1958) ("The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and *publication in a proper manner and to proper parties only*." (emphasis added)). In this way, Defendants' "official duty" camouflage does not change the communications' unprivileged audience; a Twitter post is a public tweet, even if it communicates a private message.

This case does not implicate a union contract, agreement, or constitution. Although the Complaint indicates that Defendants initially published the communications to disparage their opponents in a then-upcoming union election to prevent the rehiring of a secretary whose employment Defendants terminated for being Black, that is simply background information and not the focal point of the Complaint. Rather, Plaintiff's Complaint focuses on Defendants' behavior in spreading lies on the Internet and on public news broadcasts in multiple cities that he embezzled his employer's and coworkers' money. *See Anzevino v. DePasquale*, No. 4:08 CV 2492, 2009 WL 1662498, at *10 (N.D. Ohio June 15, 2009) (finding that "Plaintiff's claim should be construed as based upon the generalized duty not to publish false and defamatory statements about other people; not based on some provision of the CBA," because "the Amended Complaint does not invoke any rights under the CBA on its face").

Consequently, this case will be remanded for the Saginaw County Circuit Court to resolve Plaintiff's state-law claims. Notably, this Order will not impede the state court's ability to determine whether Defendants' communications are entitled to qualified privilege, which Michigan courts have done for at least 51 years. *See, e.g.*, *Harrison v. Arrow Metal Prods. Corp.*, 174 N.W.2d 875, 879–81 (Mich. Ct. App. 1969) ("Sufficiency of proof of futility or of Union's breach or of Company's repudiation depends substantially upon terminology of the Union

constitution and of the Union-Company contract." (citing *Cortez v. Ford Motor Co.*, 84 N.W.2d 523, 529 (Mich. 1957))); *see also Fulghum v. United Parcel Serv., Inc.*, 378 N.W.2d 472, 476–78 (Mich. 1985); *Dinoto v. City of Warren*, No. 203417, 1998 WL 1988600, at *2 (Mich. Ct. App. Dec. 15, 1998); *Gonyea v. Motor Parts Fed. Credit Union*, 480 N.W.2d 297, 299–300 (Mich. Ct. App. 1991); *Lins v. Evening News Ass'n*, 342 N.W.2d 573, 578–79 (Mich. Ct. App. 1983); *Merritt v. Detroit Mem'l Hosp.*, 265 N.W.2d 124, 126–27 (Mich. Ct. App. 1978). In other words, the state court may still interpret the UAW constitution, if necessary, to decide Defendants' affirmative defense of qualified privilege.

## IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion to Remand, ECF No. 7, is **GRANTED**.

Further, it is **ORDERED** that the Complaint, ECF No. 1, is **REMANDED** to the Tenth Circuit Court of Saginaw County for further proceedings.

Dated: February 18, 2022                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge